881 P.2d 1284

In the Matter of the Client Security Fund Claim of Suzanne and Stephen Patterson Regarding the Conduct of Attorney Howard Matthews.

**Suzanne PATTERSON and Stephen Patterson, Claimants–Petitioners,**

v.

**IDAHO STATE BAR, Respondent.**

No. 20772.

Supreme Court of Idaho,
Boise, May 1994 Term.

June 15, 1994.

Suzanne and Stephen Patterson, Foxburg, PA, petitioners, representing themselves.

Michael J. Oths, Idaho State Bar Counsel, Boise, for respondent.

JOHNSON, Justice.

This case concerns a claim by clients of an Idaho lawyer against the client security fund (the fund) operated by the Idaho State Bar (ISB). We agree with the conclusion of ISB's board of commissioners (the board) that the clients' loss was a result of the lawyer's negligence, not his dishonesty.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

In 1988, Suzanne and Stephen Patterson (the Pattersons) moved from Arizona to Idaho. Before leaving Arizona, they filed a homestead declaration on their Arizona home.

After the Pattersons moved to Idaho, they incurred significant debt due to emergency medical treatment. The Pattersons contacted Idaho attorney Howard Matthews in an effort to resolve their financial crisis. Matthews advised the Pattersons that state homestead laws would not protect their home in Arizona from creditors because they did not live in the house, and advised them to file bankruptcy.

Matthews filed a bankruptcy petition on behalf of the Pattersons, claiming a homestead exemption in their Arizona home. The bankruptcy court granted the Pattersons a discharge from their debts. Following the discharge, and after the Pattersons left Idaho and returned to their Arizona home, Matthews assured the Pattersons that the bankruptcy proceedings were complete and that

the Pattersons were secure in retaining their Arizona home.

The trustee in bankruptcy objected to the Pattersons' claimed homestead exemption and attempted to take possession of the Arizona home. Notice of the objection was served on Matthews. Matthews did not respond. A hearing was held in which Matthews did not appear. Matthews never notified the Pattersons that their homestead exemption was being challenged. The bankruptcy court entered an order compelling the Pattersons to surrender their Arizona home. The first time the Pattersons knew that their homestead exemption had been contested and that surrender of their home was being sought was when they received the notice to them that they must vacate their home, and if they did not, they would be removed by U.S. marshals.

When the Pattersons tried to contact Matthews to find out what was happening, Matthews evaded them. The Pattersons came to Idaho from Arizona to speak with Matthews personally and to settle the matter. In a telephone conversation with the Pattersons, Matthews acted surprised, indicated he had no idea why the Pattersons' home was being sought by the trustee, and told the Pattersons that it must be a mistake. In fact, Matthews had been aware of the proceedings contesting the homestead exemption and had failed to act accordingly.

Upon meeting with the Pattersons, Matthews lied to them about the steps he had taken in defending the challenge to their homestead exemption. Matthews told the Pattersons that he had been in contact with the trustee in bankruptcy and the trustee's counsel. The Pattersons insisted on a meeting with Matthews, the trustee, and the trustee's counsel. Matthews told the Pattersons that the trustee and the trustee's counsel were unavailable for a meeting. Matthews also told the Pattersons that he had appeared at the hearing concerning the trustee's objection to the homestead exemption, that he had won, and that the notices were simply a mistake or mix-up. He also told the Pattersons that he had contacted the trustee and that he would meet with the trustee and the trustee's counsel within the next week to ten days. He later told the Pattersons a meeting had been scheduled for a specific date and time. All of these were lies intended to conceal Matthews's failure to defend the challenge to the homestead exemption.

Upon discovering Matthews's deception, Suzanne Patterson, acting on behalf of herself and her husband, requested that the bankruptcy court reinstate the homestead exemption. Through her own efforts, Suzanne Patterson presented the case to the bankruptcy court, which determined that Matthews had not communicated to the Pattersons that their homestead exemption had been contested. The bankruptcy court concluded that the Pattersons were entitled to a homestead exemption and that the trustee was not entitled to proceed against the Pattersons' Arizona home.

The Pattersons complained to ISB concerning Matthews's conduct. The Pattersons also sought reimbursement from the fund for their loss in reinstating the homestead exemption.

An ISB hearing committee denied the Pattersons' claim. In reviewing the committee's decision, the board stated:

> There was dishonest conduct by Mr. Matthews, in that he "misinformed" the Pattersons about the efforts that he had made to protect their homestead.
>
> The Client Security Fund exists to reimburse losses "caused by the dishonest conduct of a lawyer." IBCR 600(a). The real issue is whether the dishonest conduct *caused* the Pattersons' financial loss. It is well-established that the Client Security Fund is not a substitute for malpractice insurance. If Mr. Matthews had immediately acknowledged his neglect of the case, the Pattersons would have faced the time and expense of rectifying the problem created by Mr. Matthews' neglect, even though the dishonesty would not have been

present.... [A]ny loss incurred by the Pattersons was as a result of Mr. Matthews' negligence, not his dishonesty. The fact that he was dishonest in covering up his neglect did not cause any additional financial loss to the Pattersons. Had he admitted his neglect immediately, the loss would have been the same.

The Pattersons requested review by this Court.

## II.

### THE PATTERSONS' LOSS WAS NOT "CAUSED" BY MATTHEWS'S DISHONESTY.

The Pattersons assert that their loss was caused by Matthews's dishonesty. We disagree.

The following is the standard for our review of the board's decision with regard to a claim against the fund:

On review of recommendations and findings of the Idaho State Bar, this Court exercises independent review of the record to determine whether the evidence supports the findings, giving great weight to the findings. Further, the burden is on the petitioner ... to show that the findings are not supported by the evidence. However, instead of the clear and convincing evidence standard "historically required in attorney disbarment and disciplinary actions," we apply a preponderance of the evidence standard in Clients' Security Fund actions in accordance with the applicable rule, I.B.C.R. 613(e).

*Williams v. Idaho State Bar*, 123 Idaho 367, 369, 848 P.2d 425, 427 (1993) (citations omitted) (footnote omitted).

The ISB rules concerning the fund (the rules) provide for reimbursement to claimants "for losses *caused* by the dishonest conduct of a lawyer." (Italics added.)

Definitions contained in the rules provide:

(b) *Claim.* "Claim" means a written application to the Board of Commissioners seeking reimbursement from the client security fund of a loss *resulting from* a lawyer's dishonest conduct.

(c) *Claimant.* "Claimant" means an individual ... who ... has sustained a loss *as a result of* a lawyer's dishonest conduct and has filed a claim....

....

(i) *Loss.* "Loss" means the loss of money or property *occasioned by* the dishonest conduct of a lawyer occurring during the course of a lawyer-client or fiduciary relationship between the lawyer and the claimant.

(Italics added.)

■ We agree with the board that Matthews's dishonest conduct did not cause the Pattersons' loss. His dishonest conduct was an attempt to cover up his prior negligence, and this negligence, rather than his dishonesty, caused the Pattersons' loss.

The Pattersons argue that Matthews's dishonesty did cause their loss because, in accepting their case and the attorney fee he charged, Matthews dishonestly misled them into believing he would represent them, when in fact Matthews never had any intention of performing any duties with respect to the case. The record does not support this contention. We find nothing in the record to show that Matthews, at the time he accepted the Pattersons as clients, did not intend to pursue their case. The fact that Matthews accepted the Pattersons' case, filed the bankruptcy petition, and obtained for the Pattersons a discharge in bankruptcy refutes this position.

■ By our ruling, we do not intend to denigrate or trivialize the reprehensibility of Matthews's conduct. Nevertheless, recovery from the fund was not intended to be a substitute for a malpractice action. Reimbursement from the fund is limited to loss caused by a lawyer's dishonest conduct.

We note that in a companion case concerning discipline of Matthews, we have ordered Matthews to make restitution to the Patter-

sons as a condition of reinstatement to practice law in Idaho, following the period of suspension ordered by the Court. *Idaho State Bar v. Matthews,* Docket No. 20584, 1994 WL 259697 (June 15, 1994).

## III.

## CONCLUSION.

We affirm the decision of the board.

We find it inappropriate to award costs on appeal.

McDEVITT, C.J., TROUT and SILAK, JJ., and REINHARDT, J., Pro Tem, concur.