910 P.2d 159

**In the Matter of the Client Security Fund Claim of Jay W. Beeson, Regarding the Conduct of Attorney Bryant L. Behrmann.**

Jay W. BEESON, Claimant–Petitioner,

v.

**IDAHO STATE BAR, Respondent.**

No. 20786.

Supreme Court of Idaho,
Boise, September 1994 Term.

Sept. 5, 1995.

William B. Latta, Jr., Boise, for petitioner.

Michael J. Oths, Boise, for respondent.

REINHARDT, Judge Pro Tem.

Jay W. Beeson (Beeson) petitions for review of the findings and conclusions of the Board of Commissioners of the Idaho State Bar (the Board) denying Beeson's claim for an award from the Idaho Clients' Security Fund (the Fund) based on the alleged dishonest conduct of Beeson's former attorney, Bryant E. Behrmann (Behrmann). Because we conclude that Beeson failed to meet his burden of establishing that the record does not support the findings of the Board, i.e., that Behrmann's "dishonest conduct" "caused" Beeson's "loss" and that Beeson's claim for an award did not present special and unusual circumstances, we affirm.

**I.**

**BACKGROUND AND PRIOR PROCEEDINGS**

On April 29, 1988, Behrmann filed a complaint on Beeson's behalf in the United States District Court for the District of Idaho. Although alleging alternative theories of relief, the essence of Beeson's claim was a wrongful termination action brought in conjunction with his removal in 1987 as the Director of the federally-funded Head Start program for several counties in Idaho. Beeson named as defendants, both in individual and official capacities, several people who held positions in either the Head Start program or the related Western Idaho Community Action Program.

On September 15, 1988, the defendants Beeson sued in their official capacities (the federal defendants) filed a motion to dismiss for improper service of process. On October 5, 1988, the law clerk to Judge Harold Ryan, the federal judge hearing the case, wrote a letter to Behrmann. The letter informed Behrmann that no responsive pleading had been received and that, although local rules required responsive pleadings be filed within fourteen days (which had already passed), if no responsive pleadings were filed by October 21, 1988, then the motion to dismiss might be granted for lack of response. Behrmann never filed a motion opposing the federal defendants' motion to dismiss and, on October 26, 1988, Judge Ryan entered an order dismissing Beeson's claims against the federal defendants without prejudice for failure to effect proper service of process and for failure to respond to the defendants' motion to dismiss.[1]

On October 25, 1988, the remaining defendants (the state defendants) filed for entry of default judgment on a counterclaim against Beeson seeking reimbursement for payment of allegedly personal telephone bills. The order of default had been entered on July 21, 1988, for failure to answer the defendants' counterclaim filed June 24, 1988. On November 23, 1988, Judge Ryan's law clerk

---

1. For reasons not appearing in the record, *the claims against* the federal defendants were subsequently dismissed with prejudice by stipulation of the parties.

again wrote to Behrmann warning that no motion in opposition to the motion for entry of default judgment had been received and, that if none were received by December 9, 1988, the court might grant the requested relief. On December 21, 1988, Judge Ryan entered default judgment, noting that although Behrmann had answered the defendants' counterclaim on July 22, 1988 (the day after the order of default was entered), no proper motion to set aside the default had ever been filed.[2]

The state defendants subsequently filed a motion to dismiss Beeson's claim for lack of prosecution, and Judge Ryan heard the motion on March 28, 1989. In an order dated March 29, 1989, Judge Ryan denied the motion to dismiss for lack of prosecution. However, on October 17, 1989, Judge Ryan granted a second motion of the state defendants to dismiss for lack of prosecution. In entering that order, Judge Ryan found that no discovery had been undertaken by Behrmann since the March 28th hearing, despite Behrmann's earlier representations that he intended to commence discovery in short order. Additionally, Judge Ryan found that Behrmann had demonstrated a "complete lack of diligence" evincing no intent "to seriously prosecute" the case. Judge Ryan also found that Behrmann had "repeatedly missed filing deadlines" and had not even filed a response to the motion to dismiss at issue.[3]

After Beeson's suit was dismissed, Beeson consulted with other attorneys to determine if Judge Ryan's order foreclosed any possibility of refiling or otherwise salvaging the claim. Those consultations convinced Beeson that it would not be cost effective to pursue the case further.

**2.** The entire record of Beeson's federal case was admitted into evidence by the Committee during the hearing on Beeson's claim against the Fund. However, the correspondence from Judge Ryan's chambers to Behrmann and the orders entered by Judge Ryan were omitted from the Augmentation of Transcript containing the federal record, which was filed by Beeson pursuant to the stipulation of the parties and this Court's order of November 9, 1993. Beeson has attached those documents to his brief on appeal as exhibits and, in its response brief, the Idaho State Bar has not taken exception to this further augmentation. Although Beeson should have confirmed that these documents were contained in the original

On the basis of Behrmann's above-described actions, Beeson filed a claim for an award with the Clients' Security Fund. Initially proceeding *pro se*, Beeson sought compensation for the full value of the dismissed wrongful termination claim. With the assistance of counsel, Beeson ultimately narrowed his claim to seek only those personal costs which he felt were attributable to pursuing the federal suit.

A hearing was held before the Clients' Security Fund Committee on December 15, 1992. Beeson appeared and gave testimony. Behrmann did not appear, having called the day before to say he could not attend due to a conflicting travel plan. Pursuant to Behrmann's January 13, 1993 request for a second hearing, the matter was rescheduled and Behrmann was informed he could appear telephonically. On March 19, 1993, the Committee took up the matter again and, with Beeson present, heard testimony from Behrmann's former secretary. Behrmann himself did not appear either in person or telephonically.

Before the Committee, Beeson testified that he learned of the dismissal from Behrmann a week after the order of dismissal had been entered. Beeson testified that Behrmann represented that papers had been filed in the case, when in fact nothing had been filed. According to Beeson, Behrmann blamed his secretary for the dismissal and told Beeson that at that time nothing could be done to set aside the order of dismissal. Behrmann's secretary testified that Behrmann substantially neglected Beeson's case and that Behrmann had actively avoided speaking with Beeson.

Augmentation of Transcript, we will nevertheless construe the Idaho State Bar's silence as acquiescence to including the materials as part of the record pursuant to its earlier stipulation for augmentation.

**3.** After Beeson's claim was dismissed, the state defendants moved to dismiss the counterclaim against Beeson, indicating that pursuing the claim to establish the amount of the judgment was not worthwhile in light of Beeson's financial situation. The motion was granted and the counterclaim was dismissed without prejudice.

On April 21, 1993, the Committee issued its findings of fact, conclusions of law, and recommendations, which were adopted without alteration by the Board on May 28, 1993. Although the Board found the facts to be as set forth above, the Board concluded that Behrmann's conduct was not "dishonest conduct resulting in a loss" such that it gave rise to a claim compensable from the Fund because it was more in the nature of malpractice than theft or wrongful conversion. The Board further concluded that Beeson's claim did not present special or unusual circumstances justifying award of a discretionary non-conforming claim.

Beeson filed exceptions to the Board's findings and conclusions and petitioned this Court for review.

## II.

## ANALYSIS

### A. STANDARD OF REVIEW

■■■ In *Williams v. Idaho State Bar*, 123 Idaho 367, 848 P.2d 425 (1993), we first traced the history of the Clients' Security Fund and described our standard of review for a petition challenging findings and conclusions of the Board regarding a claim for an award from the Fund as follows:

> On review of recommendations and findings of the Idaho State Bar, this Court exercises independent review of the record to determine whether the evidence supports the findings, giving great weight to the findings.... Further the burden is on the petitioner ... to show that the findings are not supported by the evidence.... [W]e apply a preponderance of the evidence standard in Clients' Security Fund actions in accordance with the applicable rule, I.B.C.R. 613(e), [which] provides that "'[a]ny issue of fact shall be proved by a preponderance of the evidence'."

*Id.* at 369, 848 P.2d at 427 (citations omitted and text of footnote included in quotation).

The above principles guide our review of Beeson's claims. Because Behrmann never

appeared to present evidence or testimony in opposition to that presented by Beeson, the only evidence for our review is that introduced by Beeson.[4]

### B. BEESON HAS NOT CARRIED HIS BURDEN OF PROVING THAT BEHRMANN ENGAGED IN "DISHONEST CONDUCT" THAT "CAUSED" HIS "LOSS"

Recently, in *Patterson v. Idaho State Bar*, 126 Idaho 266, 881 P.2d 1284 (1994), we addressed the question of whether an attorney's misrepresentations, that were designed to conceal negligent conduct, constituted "dishonest conduct" that "caused" "loss" under the rules of the Fund. We held that the attorney's misconduct in *Patterson* was not dishonest conduct causing loss sufficient for a compensable claim against the Fund. The reasoning of *Patterson* has equal application in interpreting and applying the rules of the Fund to the present case.

The Fund was established "for the purposes of maintaining the integrity and protecting the good name of the legal profession by reimbursing claimants for losses caused by the dishonest conduct of a lawyer." I.B.C.R. 600(a). The Rules of the Fund define the following terms:

> (b) *Claim.* "Claim" means a written application to the Board of Commissioners seeking reimbursement from the client security fund of a loss resulting from a lawyer's dishonest conduct.
>
> (c) *Claimant.* "Claimant" means an individual ... who ... has sustained a loss as a result of a lawyer's dishonest conduct and has filed a claim as defined in subsection (c) of this Rule.
>
> . . . . .
>
> (e) *Dishonest Conduct.* "Dishonest Conduct" means wrongful acts committed by a lawyer in the nature of theft or embezzlement of money or the wrongful taking or conversion of money, property or other things of value, including but not limited to:

---

4. Although Behrmann did write a letter opposing Beeson's claim for an award from the Fund, the letter was not verified as required by I.B.C.R. 605(b)(1), was never admitted into evidence by the Committee, and will not, therefore, be considered by this Court.

(1) Refusal to refund unearned fees received in advance as required by Rule 1.16 of the Idaho Rules of Professional Conduct; or

(2) The borrowing of money from a client without the intention to repay it, or with disregard of the lawyer's inability or reasonably anticipated inability to repay it.

I.R.B.C. 601.

In *Patterson*, we concluded that the Pattersons' claim against the Fund was properly denied. The attorney in that case, Howard Matthews (Matthews), had filed a petition for bankruptcy on behalf of the Pattersons but then substantially neglected a proceeding contesting the Pattersons' homestead exemption. This resulted in an order to the Pattersons to surrender their home. When the Pattersons learned of the order, Matthews evaded the Pattersons' inquiries, lied to them about actions that he had taken, and lied to them about actions that could be taken to rectify the situation.

In explaining why the rules of the Fund required denial of the Pattersons' claim, we stated that "Matthews' dishonest conduct did not cause the Pattersons' loss. His dishonest conduct was an attempt to cover up his prior negligence, and this negligence, rather than his dishonesty, caused the Pattersons' loss." *Patterson*, 126 Idaho at 268, 881 P.2d at 1286.

 In this case, the record establishes that Behrmann engaged in a course of conduct substantially similar to that of Matthews. Behrmann twice neglected the correspondence from Judge Ryan's law clerk warning him that inaction on Behrmann's part could result in dismissal of Beeson's suit and entry of default judgment on the state defendants' counterclaim. Additionally, the record establishes that at times Behrmann deliberately evaded Beeson's calls, misled Beeson into believing that the litigation was proceeding satisfactorily, and ultimately told Beeson that nothing could be done to reinitiate the litigation without revealing that disclosure of Behrmann's negligence might provide a basis for relief.

We conclude, as in *Patterson*, that the conduct at issue in this case is not compensable under the rules of the Fund. While Beeson is correct in arguing that Behrmann's negligence proximately caused the loss of his suit, which was a "thing of value" to Beeson, this negligence is not sufficiently analogous to conversion or theft as described in I.B.C.R. 601(e). The language of that rule was clearly designed to narrowly limit the scope of reimbursable losses to misappropriations and to thus exclude an attorney's deceptions stemming from his or her negligence or malpractice.[5]

 Whether, as here, deception in conjunction with attorney negligence is analyzed as *not coming within the definition of "dishonest conduct"* under the rules or, as in *Patterson*, it is analyzed as not causing the loss,[6] the result is the same: "recovery from the fund was not intended to be a substitute for a malpractice action. Reimbursement from the fund is limited to loss caused by a lawyer's dishonest conduct." *Patterson*, 126 Idaho at 268, 881 P.2d at 1286. Although the record before us demonstrates a condemnable pattern of negligence, we must nevertheless faithfully interpret the rules of the Fund to deny Beeson's claim in order to preserve the limited resources of the Fund for that

---

**5.** Beeson does not allege that Behrmann received or wrongfully withheld any fee payment because, according to Beeson, Behrmann accepted the case on a contingency fee basis. Therefore, by his negligence, Behrmann did not engage in "dishonest conduct" as that term is defined by example in I.B.C.R. 601(e)(1) (improper withholding of unearned fee).

**6.** The problem is properly subject to both methods of analysis because the definitions in the rules of the Fund are interconnected. The Board recognized this in its order when explaining that, even if it were to assume "dishonest conduct," as defined, Beeson still had not established that the conduct "caused" a "loss" under the rules.

The interconnected definitions in the Fund rules also explains one error in the Board's conclusions. The Board concluded that Beeson was a proper "claimant" as defined in I.B.C.R. 601(c). However, that conclusion is a misstatement because the definition of a "claimant" is limited to one who, unlike Beeson, has "sustained a loss as a result of a lawyer's dishonest conduct."

**50**

narrow class of claims it was designed to compensate.

## C. THE BOARD DID NOT ERR IN CONCLUDING THAT BEESON'S CLAIM AGAINST THE FUND DID NOT PRESENT "SPECIAL AND UNUSUAL CIRCUMSTANCES"

 Beeson's sole objection is that the Board's statement that his claim did not "contain [the] type of special circumstances" contemplated by I.B.C.R. 604(f) was not a sufficient explanation of its reasoning to establish that the Board reached its decision "by an exercise of reason."

I.B.C.R. 604(f) provides as follows:

> **Special Circumstances.** In cases of extreme hardship or special and unusual circumstances, the Committee may, in its discretion, recognize a claim which would otherwise be excluded under these Rules.

The Board concluded that the claim in question evidenced neither extreme hardship nor special and unusual circumstances such as to bring into play their discretionary functions vested by I.B.C.R. 604(f). The claimant has failed to demonstrate that the Board's finding in this regard is not supported by substantial and competent evidence.

## III.

### CONCLUSION

Under the rules of the Fund, we hold that Behrmann's misrepresentations to Beeson did not constitute "dishonest conduct" that "caused" Beeson's "losses." We also hold that the Board did not err in concluding that Beeson's claim against the Fund did not present "special and unusual circumstances." We affirm the decision of the Board, but conclude that it is inappropriate to award costs on appeal.

▮ Our decision in this matter is limited to the issues presented and does not constitute a finding for purposes of the professional discipline case against Behrmann now pending in this Court. *See* I.B.C.R. 605(d)(2)(A). Likewise, in the event that discipline should be ordered in the professional discipline case, nothing in today's decision

forecloses our ability to order appropriate restitution as part of that proceeding. *See Idaho State Bar v. Matthews*, 910 P.2d 153 (1994) (restitution ordered as a term of suspension for costs denied in claim against the Fund).

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.